Debbie Leonard (#8260)
McDonald Carano LLP
100 West Liberty Street, Tenth Floor
Reno, Nevada 89501
(775) 788-2000 Telephone
dleonard@mcdonaldcarano.com

Brandon L. Jensen *(will comply with LR IA 11-2 within 14 days)*
Budd-Falen Law Offices, LLC
300 East 18th Street
Post Office Box 346
Cheyenne, Wyoming 82003
(307) 632-5105 Telephone
brandon@buddfalen.com

*Attorneys for Plaintiffs Baker Ranches, Inc.,
Darwin C. Wheeler, and Owen L. and Patricia T. Gonder*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| BAKER RANCHES, INC., a Nevada Corporation; DARWIN C. WHEELER; and OWEN L. AND PATRICIA T. GONDER, <br><br> Plaintiffs, <br><br> v. <br><br> RYAN ZINKE, in his official capacity as Secretary of the United States Department of the Interior; the UNITED STATES DEPARTMENT OF THE INTERIOR; DAN SMITH, in his capacity as Acting Director of the National Park Service; the NATIONAL PARK SERVICE; and CURT R. DIMMICK, in his official capacity as Acting Superintendent of the Great Basin National Park, <br><br> Defendants. | CASE NO. <br><br><br> **PLAINTIFFS' COMPLAINT TO QUIET TITLE AND FOR DECLARATORY AND INJUNCTIVE RELIEF** |

COMES NOW, the Plaintiffs Baker Ranches, Inc., Darwin C. Wheeler, and Owen L. and Patricia T. Gonder, by and through their undersigned attorney, Debbie Leonard of McDonald Carano, LLP, and states its complaint against the United States Department of the Interior, the National Park Service, and the Great Basin National Park as follows:

## NATURE OF THE ACTION

1. This action seeks to quiet title through declaratory relief by requiring the Federal Defendants, United States of America, Department of the Interior, and the National Park Service, to provide to the Plaintiffs a recognized right-of-way or easement, as required by the Irrigation or General Right of Way Act of March 3, 1891, 43 U.S.C. §§ 946-949, or the Act of July 26, 1866, 43 U.S.C. § 661, for the operation and maintenance of the Snake Creek pipeline, situated within the Great Basin National Park.

2. Specifically, the Plaintiffs challenge the Department of the Interior's violations of, and failure to comply with, the Irrigation or General Right of Way Act of March 3, 1891, 43 U.S.C. §§ 946-949, or the Act of July 26, 1866, 43 U.S.C. § 661.

3. The Irrigation or General Right of Way Act of March 3, 1891, codified at 43 U.S.C. §§ 946-949, and the Act of July 26, 1866, codified at 43 U.S.C. § 661, generally provides for rights-of-way or easements through public and reserved lands of the United States for the operation and maintenance of reservoirs, canals, and pipelines.

4. The lands upon which the Snake Creek pipeline are located were designated a National Park in 1986. Establishment of the Great Basin National Park was "subject to valid existing rights." See 16 U.S.C. § 410mm-1(d).

5. Furthermore, the Great Basin National Park Act of 1986, 16 U.S.C. § 410mm-1(g), specifically provides that "existing water-related range improvements inside the park may be maintained by the Secretary or the persons benefitting from them, subject to reasonable regulation by the Secretary."

6. The Great Basin National Park refuses to recognize the existence of any valid existing right to operate and maintain the Snake Creek pipeline.

7. Accordingly, since the National Park Service is violating the mandate contained within the Irrigation or General Right of Way Act of March 3, 1891 and the Act of July 26, 1866, by refusing to recognize a right-of-way or easement over National Park Service lands, judicial relief is necessary and appropriate to recognize that such a right-of-way or easement exists, for the operation and maintenance of the Snake Creek pipeline.

2

## JURISDICTION AND VENUE

8. The Plaintiffs bring this action to quiet title, pursuant to the Quiet Title Act, 28 U.S.C. §§ 1346(f) and 2409a, for a recognized right-of-way or easement through the Great Basin National Park for the operation and maintenance of the Snake Creek pipeline, pursuant to the Irrigation or General Right of Way Act of March 3, 1891, 43 U.S.C. §§ 946-949, or the Act of July 26, 1866, 43 U.S.C. § 661.

9. The Federal Defendants have consented to a waiver of sovereign immunity in civil actions, pursuant to 28 U.S.C. §§ 1346(f) and 2409a, to adjudicate disputes regarding real property in which the United States claims an interest.

10. The Plaintiffs also bring this civil action for a writ of mandamus, pursuant to 28 U.S.C. § 1361, to "compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." The Plaintiffs seek to compel the United States of America, Department of the Interior, and the National Park Service to provide to the Plaintiffs a recognized right-of-way or easement, pursuant to the Irrigation or General Right of Way Act of March 3, 1891, 43 U.S.C. §§ 946-949, or the Act of July 26, 1866, 43 U.S.C. § 661, for the operation and maintenance of the Snake Creek pipeline, situated within the Great Basin National Park.

11. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331, because this action arises under the laws of the United States, including the Irrigation or General Right of Way Act of March 3, 1891, 43 U.S.C. §§ 946-949, the Act of July 26, 1866, 43 U.S.C. § 661, the Declaratory Judgment Act, 28 U.S.C. § 2201, the Quiet Title Act, 28 U.S.C. §§ 1346(f) and 2409a, and the Equal Access to Justice Act, 28 U.S.C. § 2412.

12. An actual, justiciable controversy now exists between the Plaintiffs and the Federal Defendants; therefore, this Court may declare the rights and other legal relations of the parties in this action under 28 U.S.C. §§ 2201 and 2202.

13. Since this action is against the United States and is founded upon an Act of Congress, jurisdiction is also proper in this Court pursuant to 28 U.S.C. § 1346(a)(2).

14. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(e) and 1402(d), because a substantial part of the events giving rise to the claims herein occurred within the State

3

of Nevada and the public lands that are the subject of this action, owned and managed by the National Park Service, are located within the State of Nevada.

15. This case is ripe for judicial review because the Federal Defendants' employees, officers, and agents have unlawfully interfered with, and will continue to interfere with and deny, the Plaintiffs' right-of-way or easement granted pursuant to the Irrigation or General Right of Way Act of March 3, 1891, 43 U.S.C. §§ 946-949, or the Act of July 26, 1866, 43 U.S.C. § 661, for the operation and maintenance of the Snake Creek pipeline, situated within the Great Basin National Park.

**PARTIES**

16. The Plaintiff Baker Ranches, Inc., is a Nevada corporation that owns, holds, and maintains water rights which are conveyed, in part, through the Snake Creek pipeline to its farm and grazing lands in Millard County, Utah. The Plaintiff's principle place of business is in the County of White Pine, State of Nevada.

17. The Plaintiff Darwin C. Wheeler is a resident of Garrison, Utah. Mr. Wheeler owns, holds, and maintains water rights which are conveyed, in part, through the Snake Creek pipeline to his farm and grazing lands in Millard County, Utah.

18. The Plaintiffs Owen L. and Patricia T. Gonder are residents of Oak City, Utah. Mr. and Mrs. Gonder own, hold, and maintain water rights which are conveyed, in part, through the Snake Creek pipeline to their farm and grazing lands in Millard County, Utah.

19. The Defendant Ryan Zinke is the Secretary of the United States Department of the Interior. As Secretary, he is responsible for the direction and supervision of all operations and activities in the Department of the Interior, including those taken by the National Park Service. In that capacity, he, his agents, and his employees are charged with implementing the requirements of the Irrigation or General Right of Way Act of March 3, 1891, 43 U.S.C. §§ 946-949, on the National Park Service lands within the State of Nevada.

20. The Defendant United States Department of the Interior is a Cabinet-level agency that manages America's natural and cultural resources, including the Park Service lands at issue herein.

4

21. The Defendant Dan Smith is the acting Director of the National Park Service and is sued in his official capacity. As Director, Dan Smith is responsible for the direction and supervision of all operations and activities of the National Park Service, including those in the State of Nevada. In that capacity, the Defendant and his agents and employees are charged with implementing the statutory and regulatory requirements relating to use of the National Park Service lands.

22. The Defendant National Park Service is an agency of the United States Department of the Interior charged with management of the National Park Service lands at issue herein in accordance and compliance with federal law.

23. The Defendant Curt R. Dimmick is the Acting Superintendent of the Great Basin National Park and is sued in his official capacity. As Acting Superintendent, Mr. Dimmick is responsible for the direction and supervision of all operations and activities in the Great Basin National Park. In that capacity, the Defendant and his agents and employees are charged with implementing the statutory and regulatory requirements relating to use of the National Park Service lands.

### THE IRRIGATION OR GENERAL RIGHT OF WAY ACT OF MARCH 3, 1891

24. The Irrigation or General Right of Way Act of March 3, 1891, formerly codified at 43 U.S.C. §§ 946-949, generally provides for rights-of-way or easements through public and reserved lands of the United States for the operation and maintenance of reservoirs, canals and pipelines.

25. National Forest System lands are reserved lands. See Chicago, Milwaukee, & St. Paul Railway Co. of Idaho v. United States, 244 U.S. 351, 356 (1917) (lands in a National Forest not only are specially reserved from sale but are set apart for a public purpose).

26. The 1891 Act was repealed by the Federal Land Policy and Management Act of 1976 ("FLPMA"), but remained in effect regarding rights acquired prior to October 21, 1976, the effective date of FLPMA. See 43 U.S.C. § 1701 (set out as note under § 1701).

27. Section 946 of the 1891 Act provides the following in part:

> The right of way through the public lands and reservations of the United States is hereby granted to any canal ditch company, irrigation or drainage district formed for the purpose of irrigation or drainage, and duly organized under the laws of any State . . . to the extent of the ground occupied by the water of any reservoir and of any canals and laterals and fifty feet on each side of the marginal limits thereof.

43 U.S.C. § 946.

28. A right-of-way granted pursuant to section 946 is an easement. See Overland Ditch and Reservoir Company v. United States, No. Civ. 96-N-797, 1996 WL 33484927, *9 (D. Colo. Dec. 16, 1996); see also Bijou Irrigation District v. Empire Club, 804 P.2d 175, 182 (Colo. 1991).

29. Section 947 sets forth the procedures by which a canal or ditch company could avail itself of benefits under the 1891 Act. See 43 U.S.C. § 947. Any canal or ditch company desiring to secure the benefits of [the 1891 Act] shall . . . if upon unsurveyed lands, within twelve months after the survey thereof by the United States, file with the officer . . . of the land office for the district where such land is located a map of its canal or ditch and reservoir." See id. Upon the approval thereof by the Department of the Interior, "the same shall be noted upon the plats in said office, and thereafter all such lands over which such rights of way shall pass shall be disposed of or subject to such right of way." See id.

30. Accordingly, maps of unsurveyed lands were accepted for information purposes only; the federal government did not approve them. See Overland Ditch and Reservoir Company v. United States, No. Civ. 96-N-797, 1996 WL 33484927, *11 (D. Colo. Dec. 16, 1996); see also Rights of Way Upon Unsurveyed National Forest Lands, 43 Public Lands Decisions 448, 448 (November 14, 1914) ("On the filing of maps involving unsurveyed lands within national forests, the General Land Office will inform applicants that the maps are accepted for filing for general information, but that such acceptance gives no rights upon the ground so long as the land remains unsurveyed.").

31. Section 947's provision for the approval of maps and transfer of land subject to the right-of-way illustrated on the approved map relates to rights against third parties who may also have claims in the land. See Overland Ditch and Reservoir Company v. United States, No. Civ. 96-N-797, 1996 WL 33484927, *11 (D. Colo. Dec. 16, 1996); see also De Weese v. Henry

Investment Co., 39 Public Lands Decisions 27, 33 (June 8, 1910) ("The filing of a map is requisite only to protect the grantee from claims by other parties."); and Regulations for Rights of Way over Public Lands and Reservations, 36 Public Lands Decisions 567, 573, ¶17 (June 6, 1908) ("Maps showing canals, ditches, or reservoirs wholly upon unsurveyed lands may be received and placed on file in the General Land Office and the local land office of the district in which the land is located, for general information. The date of filing will be noted thereon; but the maps will not be submitted to nor approved by the Secretary of the Interior, as the act makes no provision for the approval of any but maps showing the location in connection with the public surveys.").

32. Consequently, the 1891 Act does not require governmental approval of a right-of-way over unsurveyed lands. See Overland Ditch and Reservoir Company v. United States, No. Civ. 96-N-797, 1996 WL 33484927, *10 (D. Colo. Dec. 16, 1996); see also Roth v. United States, 326 F.Supp.2d 1163, 1173-74 (D. Mont. 2003).

33. Therefore, the 1891 Act provides for an *in praesenti* grant of a right-of-way or easement upon the completion of the construction of the facility on unsurveyed lands. See id. at *11; see also United States v. Rickey Land & Cattle Co., 164 F. 496, 499-500 (N.D. Cal. 1908) (holding that "vested easements in and to public lands for a reservoir site [are not acquired] until the actual completion of the reservoir, so that the waters to be impounded therein could be applied to the beneficial uses contemplated by the irrigation system of which it forms a part."); and Sierra Ditch and Water Co., 38 Public Lands Decisions 547, 548-49 (April 6, 1910) ("Rights of way [under the 1891 Act] attach in only two ways: (1) by construction of a ditch or reservoir; [or] (2) by the approval of maps filed thereunder.").

34. The 1891 Act, and regulations issued thereunder, required that a party who wished to perform work or construct facilities on unsurveyed national forest lands must seek and obtain permission from the federal government; a right-of-way or easement vested, however, upon completion of the construction of the facility. See Overland Ditch and Reservoir Company v. United States, No. Civ. 96-N-797, 1996 WL 33484927, *11 (D. Colo. Dec. 16, 1996); see also United States v. Henrylyn Irrigation Co., 205 F. 970, 972 (D. Colo. 1912) ("The legislative intent is manifest that as to these reserves, created as they are for a special purpose, no occupancy nor

7

use thereof by private parties shall be permitted save upon the exercise of a discretion by the proper departments as to whether such use will interfere with the purposes of such reserve."); United States v. Lee, 110 P. 607, 612 (N.M. 1910) (recognizing the special status of reserved lands and contrasting the consent-for-construction requirement on reserved lands with the absence of any such requirement for construction on unreserved public lands); and Rights of Way Upon Unsurveyed National Forest Lands, 43 Public Lands Decisions 448, 448-49 (November 14, 1914) ("It is necessary to secure a permit before construction can be commenced upon the national forests.").

### ACT OF JULY 26, 1866 GRANTING THE RIGHT OF WAY TO DITCH AND CANAL OWNERS OVER THE PUBLIC LANDS AND FOR OTHER PURPOSES

35. The Act of July 26, 1866, formerly codified at 43 U.S.C. § 661, generally provides for rights-of-way or easements through the public lands of the United States for the operation and maintenance of ditches and canals.

36. The Act of 1866 was repealed by the Federal Land Policy and Management Act of 1976 ("FLPMA"), but remained in effect regarding rights acquired prior to October 21, 1976, the effective date of FLPMA. See 43 U.S.C. § 1701 (set out as note under § 1701).

37. The Act of 1866 provides the following, in part:

> That whenever, by priority of possession, rights to the use of water for mining, agricultural, manufacturing, or other purposes, have vested and accrued, and the same are recognized and acknowledged by the local customs, laws, and the decisions of courts, the possessors and owners of such vested rights shall be maintained and protected in the same; and the right of way for the construction of ditches and canals for the purposes aforesaid is hereby acknowledged and confirmed.

43 U.S.C. § 661.

38. A person avails himself of this section respecting a right-of-way for canals and ditches on public lands of the United States by merely making beneficial use of the water; no application to any official of the United States beforehand was necessary to give him a right-of-way over the public lands. See Clausen v. Salt River Valley Water Users' Association, 123 P.2d 172, 175 (Arizona 1942).

8

39. A person who enters the public lands and constructs a pipeline thereon, under a claim of ownership of a water right, is entitled to the protection afforded vested ditch and water rights by this section. See San Jose Land & Water Company v. San Jose Ranch Company, 189 U.S. 177, 183-84 (1903).

40. The United States has long recognized the validity of private water rights obtained pursuant to state water law. See Andrus v. Charlestone Stone Products Co., Inc., 436 U.S. 604, 614 (1978) (noting in 1866, 1870, and 1872, Congress affirmed the view "that private water rights on federal lands were to be governed by state and local law and custom").

41. In Jennison v. Kirk, 98 U.S. 453 (1878), the Supreme Court recognized that the general purpose of the 1866 Act was to give the sanction of the government to vested water rights acquired by owners and possessors of those rights that were recognized by local custom, laws, and decisions of the courts. See id. at 460–461. The rights-of-way incident to such water rights were recognized in the same manner as the vested water rights, *i.e.* by local customs, laws and decisions of the courts. See id.

42. The Ninth Circuit has also recognized that the 1866 Act protected water rights and rights-of-way for diversion of the water in accordance with local and customary law and usage. See Hunter v. United States, 388 F.2d 148 (9th Cir. 1967) (a case arising in California); and Adams v. United States, 3 F.3d 1254 (9th Cir. 1993) (a case arising in Nevada). According to the Ninth Circuit, to secure a right-of-way under the Act of 1866, the proponent "must have shown, by a preponderance of the evidence, that their water rights vested according to local custom or law." See Adams v. United States, 3 F.3d 1254, 1260 (9th Cir. 1993); see also Ennor v. Raine, 74 P. 1, 2 (Nev. 1903) (holding that under the Act of 1866, a prior appropriator is entitled to a right-of-way for conveying water through the natural stream channel).

**FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF**

43. The Snake Creek pipeline is located on unsurveyed National Park Service lands within the Great Basin National Park. More specifically, the Snake Creek pipeline is located along Snake Creek beginning in the S½ of Section 10, Township 12 North, Range 69 East of the Mount Diablo Meridian, and running through the N½ of Section 15, SW¼ of Section 11, N½ of Section

14, and ending in Section 13, Township 12 North, Range 69 East of the Mount Diablo Meridian, White Pine County, Nevada.

44. The Snake Creek pipeline is approximately three miles in length and is constructed of concrete.

45. Water is conveyed to private lands for irrigation purposes, in part, through the Snake Creek pipeline.

46. The Plaintiffs have the exclusive right, as recognized under the laws of Utah and Nevada, to all the water in Snake Creek for irrigation purposes, with an 1880 priority date.

47. Plaintiffs' water right includes, as an appurtenance, a right of way over public lands to exercise the water right and to divert the waters of Snake Creek so that they can be put to beneficial use.

48. The Snake Creek pipeline is necessary for Plaintiffs to exercise their water right and put the waters of Snake Creek to beneficial use.

49. The Great Basin National Park was created from the Humboldt National Forest. The Humboldt National Forest was originally set aside in 1904. Thus, the Plaintiffs' rights to the water in Snake Creek predated the establishment of the Humboldt National Forest by twenty-four years and predated the establishment of the Great Basin National Park 106 years.

50. The Snake Creek pipeline was constructed under a special use permit issued by the Humboldt National Forest on February 19, 1962 and operated under various special use permits issued by the Forest Service until February 28, 1986.

51. The special use permit was not renewed by the Forest Service after its expiration in 1986. However, the Plaintiffs, or their predecessors-in-interest, have continued to use, operate, maintain and repair the Snake Creek pipeline continuously since its original construction.

52. The lands upon which the Snake Creek pipeline are located were designated a National Park on October 27, 1986. Establishment of the Great Basin National Park was "subject to valid existing rights." See 16 U.S.C. § 410mm-1(d).

53. Furthermore, the Great Basin National Park Act of 1986, 16 U.S.C. § 410mm-1(g), specifically provides that "existing water-related range improvements inside the park may be

1  maintained by the Secretary or the persons benefitting from them, subject to reasonable regulation
2  by the Secretary."

3  54.  Upon its establishment in 1986, the Great Basin National Park did not demand or
4  require a special use permit, or any other kind of authorization, for the Snake Creek pipeline.
5  However, the Plaintiffs, or their predecessors-in-interest, have continued to use, operate, maintain
6  and repair the Snake Creek pipeline continuously since its original construction.

7  55.  For example, in 1986-87, upon permission from Park Service personnel, the
8  Plaintiffs (or in the case of Baker Ranches, Inc., its predecessor-in-interest) repaired a culvert
9  crossing with rock and concrete. In addition, the Plaintiffs also installed a cable truss on a culvert
10 crossing, which included pouring concrete for the ends of the cable and installing the cable
11 supported structure. A special use permit, or any other kind of authorization, was not issued for
12 the pipeline.

13 56.  In June 1988 Park Service personnel, including the Superintendent of the National
14 Park, ordered the Plaintiffs (or in the case of Baker Ranches, Inc., its predecessor-in-interest) to
15 perform necessary maintenance and repair of the pipeline, even though a special use permit, or
16 any other kind of authorization, was never issued for the Snake Creek pipeline.

17 57.  In 2005, upon permission from Park Service personnel, including the Acting
18 Superintendent of the National Park, the Plaintiffs replaced an old culvert along the pipeline,
19 including the use of heavy machinery to repair erosion damage caused by flooding and to pour
20 replacement concrete joints at each end of the culvert. Again, a special use permit, or any other
21 kind of authorization, was not issued for the pipeline.

22 58.  In 2012, upon permission from Park Service personnel, including the
23 Superintendent of the National Park, the Plaintiffs repaired and replaced portions of the intake
24 structure to the pipeline which had been vandalized. Again, a special use permit, or any other
25 kind of authorization, was not issued for the pipeline.

26 59.  By repeatedly and routinely authorizing repairs and maintenance of the pipeline
27 from 1986 until at least 2012, without requiring a special use permit or other kind of authorization,
28 ///

the National Park Service has recognized and acknowledged the Plaintiffs' historic right of access for the Snake Creek pipeline.

60. In November 2015, upon the Plaintiffs' approval, the National Park Service diverted water from the Snake Creek Pipeline to determine how much water would arrive downstream without using the pipeline. Prior to the spring runoff in March 2016, the National Park Service returned the flows of Snake Creek through the pipeline. Without the pipeline, water would travel no further than 150 yards downstream, and could not reach the Plaintiffs' respective properties, thereby depriving Plaintiffs of the ability to exercise their water right.

61. During the summer of 2016, upon the Plaintiffs' approval, the National Park Service again diverted water from the pipeline to kill non-native species of fish in the Snake Creek. Again, it was observed that water only travelled approximately 200 yards downstream and could not reach the Plaintiffs' respective properties without the pipeline.

62. Furthermore, the Plaintiffs have continuously performed routine maintenance of the pipeline, including removal of rocks, sand and gravel from the intake structure; repairing culvert crossings with rocks and concrete mixed in a wheelbarrow; repairing leaks in the pipeline; and controlling the amount of water into the pipeline to avoid washouts.

63. The existence and continued use, operation, maintenance and repair of the pipeline with the boundaries of the Great Basin National Park – authorized by the Superintendent of the Great Basin National Park – is inconsistent with the stated mission of the National Park Service and constitutes a clear and unequivocal abandonment of any prior claim adverse to the Plaintiffs' claim of a right-of-way or easement.

64. Despite previously acknowledging the Plaintiffs' historic right of access, beginning in 2016 the National Park Service refused to recognize the Plaintiffs' prior valid existing right to a right-of-way or easement for the operation and maintenance of the Snake Creek pipeline. In addition, the National Park Service has declined to allow the Plaintiffs to maintain and repair its easement in accordance with the rights granted by the 1866 and 1891 Acts.

///

///

**FIRST CLAIM FOR RELIEF:
QUIET TITLE IN A RIGHT-OF-WAY OR EASEMENT ACROSS
NATIONAL PARK SERVICE LANDS**

65.     The Plaintiffs assert and allege all preceding paragraphs as if fully set forth herein.

66.     The Plaintiffs bring this civil action, pursuant to the Quiet Title Act, 28 U.S.C. §§ 1346(f) and 2409a, for a recognized right-of-way through the Great Basin National Park for the operation and maintenance of the Snake Creek pipeline, pursuant to the Irrigation or General Right of Way Act of March 3, 1891, 43 U.S.C. §§ 946-949, or the Act of July 26, 1866, 43 U.S.C. § 661.

67.     The nature of the right, title or interest, which the Plaintiffs claim in the real property at issue was acquired pursuant to the Irrigation or General Right of Way Act of March 3, 1891, 43 U.S.C. §§ 946-949, or the Act of July 26, 1866, 43 U.S.C. § 661.

68.     In Utah, the appropriator has an interest in the stream from his point of diversion to its source, including the right to have water, in quantity and quality to satisfy his appropriation, come to his point of diversion.  See Adams v. Portage Irrigation, Reservoir & Power Co., 72 P.2d 648, 653 (Utah 1937).  Thus, since their water rights vested according to local custom or law prior to the establishment of both the National Forest and the National Park, the Plaintiffs have a right to have water, in quantity and quality to satisfy their appropriation, come to their point of diversion, including conveyance of water through the Snake Creek pipeline to fulfill their appropriation.  Wherever the industry of the pioneer has appropriated a source of water, either on the surface of or under the public lands, he and his successors acquire an easement and right to take and use such water to the extent indicated by the original appropriation.  See Sullivan v. N. Spy Min. Co., 40 P. 709, 710 (Utah 1895).  This easement carries with it such rights of ingress and egress as are necessary to its proper enjoyment.  See id.

69.     The lands upon which the Snake Creek pipeline are located were designated a National Park in 1986.  Establishment of the Great Basin National Park was "subject to valid existing rights."  See 16 U.S.C. § 410mm-1(d).

70.     Furthermore, the Great Basin National Park Act of 1986, 16 U.S.C. § 410mm-1(g), specifically provides that "existing water-related range improvements inside the park may be

13

maintained by the Secretary or the persons benefitting from them, subject to reasonable regulation by the Secretary."

71. The nature of the right, title, or interest, which the Federal Defendants claim in the real property herein lies in the fact that the Federal Defendants own and manage the National Park Service lands that encompass the Snake Creek pipeline at issue herein.

72. The National Park Service refuses to recognize the existence of a right-of-way or easement to operate and maintain the Snake Creek pipeline, located on unsurveyed lands within the Great Basin National Park.

73. If a recognized right-of-way or easement existed, the Plaintiffs would not be liable for any trespass to the United States for the operation and maintenance of the Snake Creek pipeline. At the same time, the National Park Service may not preclude or unreasonably interfere with the reasonable exercise of the rights of those who hold valid rights-of-way within the boundaries of National Park Service lands.

74. Furthermore, the Plaintiffs bring this action to enjoy use and maintenance of the Snake Creek pipeline without fear of administrative, civil, or criminal liability for any alleged unauthorized activity or trespass.

75. Judicial relief is necessary and appropriate, pursuant to the Quiet Title Act, to recognize that such a right-of-way or easement exists, to ensure access for the operation and maintenance of the Snake Creek pipeline.

**SECOND CLAIM FOR RELIEF:**
**DECLARATORY JUDGMENT RECOGNIZING A RIGHT-OF-WAY OR EASEMENT ACROSS NATIONAL PARK SERVICE LANDS**

76. The Plaintiffs assert and allege all preceding paragraphs as if fully set forth herein.

77. Title 28 U.S.C. § 2201 authorizes this Court to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

78. This action seeks to quiet title through declaratory relief by requiring the Federal Defendants to provide the Plaintiffs a recognized right-of-way or easement, as required by the

Irrigation or General Right of Way Act of March 3, 1891, 43 U.S.C. §§ 946-949, or the Act of July 26, 1866, 43 U.S.C. § 661, and by way of Plaintiffs' right to a right of way as an appurtenance to its water right and as a necessity for the exercise thereof, for the operation and maintenance of the Snake Creek pipeline, situated within the Great Basin National Park.

79.  The nature of the right, title or interest, which the Plaintiffs claim in the real property at issue was acquired pursuant to the Irrigation or General Right of Way Act of March 3, 1891, 43 U.S.C. §§ 946-949, or the Act of July 26, 1866, 43 U.S.C. § 661.

80.  In Utah, the appropriator has an interest in the stream from his point of diversion to its source, including the right to have water, in quantity and quality to satisfy his appropriation, come to his point of diversion. See Adams v. Portage Irrigation, Reservoir & Power Co., 72 P.2d 648, 653 (Utah 1937).  Thus, since their water rights vested according to local custom or law prior to the establishment of both the National Forest and the National Park, the Plaintiffs have a right to have water, in quantity and quality to satisfy their appropriation, come to their point of diversion, including conveyance of water through the Snake Creek pipeline to fulfill their appropriation.  Wherever the industry of the pioneer has appropriated a source of water, either on the surface of or under the public lands, he and his successors acquire an easement and right to take and use such water to the extent indicated by the original appropriation.  See Sullivan v. N. Spy Min. Co., 40 P. 709, 710 (Utah 1895).  This easement carries with it such rights of ingress and egress as are necessary to its proper enjoyment.  See id.

81.  The lands upon which the Snake Creek pipeline are located were designated a National Park in 1986.  Establishment of the Great Basin National Park was "subject to valid existing rights."  See 16 U.S.C. § 410mm-1(d).

82.  Furthermore, the Great Basin National Park Act of 1986, 16 U.S.C. § 410mm-1(g), specifically provides that "existing water-related range improvements inside the park may be maintained by the Secretary or the persons benefitting from them, subject to reasonable regulation by the Secretary."

///

///

83. Judicial relief is necessary and appropriate, pursuant to the Declaratory Judgment Act, to recognize that such a right-of-way or easement exists, to ensure access for the operation and maintenance of the Snake Creek pipeline.

**THIRD CLAIM FOR RELIEF:**
**WRIT OF MANDAMUS TO COMPEL THE FEDERAL DEFENDANTS TO PROVIDE A RIGHT-OF-WAY OR EASEMENT ACROSS NATIONAL PARK SYSTEM LANDS**

84. The Plaintiffs assert and allege all preceding paragraphs as if fully set forth herein.

85. Title 28 U.S.C. § 1361 authorizes this Court to compel an officer of the United States to perform a duty owed to the Plaintiffs. Section 1361 specifically states that "the district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the Plaintiff."

86. The Plaintiffs have a clear right to the relief sought to compel the National Park Service to provide to them a right-of-way or easement across National Park Service lands pursuant to the Irrigation or General Right of Way Act of March 3, 1891, the Act of 1866 and/or as an appurtenance to Plaintiffs' preexisting water rights recognized under state law. The Plaintiffs' claim is clear and indisputable and the Federal Defendants' duty is plainly defined, peremptory and owed to the Plaintiffs.

87. The nature of the right, title or interest, which the Plaintiffs claim in the real property at issue was acquired pursuant to the Irrigation or General Right of Way Act of March 3, 1891, 43 U.S.C. §§ 946-949, or the Act of July 26, 1866, 43 U.S.C. § 661.

88. In Utah, the appropriator has an interest in the stream from his point of diversion to its source, including the right to have water, in quantity and quality to satisfy his appropriation, come to his point of diversion. See Adams v. Portage Irrigation, Reservoir & Power Co., 72 P.2d 648, 653 (Utah 1937). Thus, since their water rights vested according to local custom or law prior to the establishment of both the National Forest and the National Park, the Plaintiffs have a right to have water, in quantity and quality to satisfy their appropriation, come to their point of diversion, including conveyance of water through the Snake Creek pipeline to fulfill their appropriation. Wherever the industry of the pioneer has appropriated a source of water, either on the surface of or under the public lands, he and his successors acquire an easement and right to

1    take and use such water to the extent indicated by the original appropriation.  See Sullivan v. N.
2    Spy Min. Co., 40 P. 709, 710 (Utah 1895).  This easement carries with it such rights of ingress
3    and egress as are necessary to its proper enjoyment.  See id.

4        89.    The lands upon which the Snake Creek pipeline are located were designated a
5    National Park in 1986.  Establishment of the Great Basin National Park was "subject to valid
6    existing rights."  See 16 U.S.C. § 410mm-1(d).

7        90.    Furthermore, the Great Basin National Park Act of 1986, 16 U.S.C. § 410mm-1(g),
8    specifically provides that "existing water-related range improvements inside the park may be
9    maintained by the Secretary or the persons benefitting from them, subject to reasonable regulation
10   by the Secretary."

11       91.    A writ of mandamus is necessary and appropriate to compel the National Park
12   Service to provide to the Plaintiffs a right-of-way or easement across National Park Service lands.
13   Such a right-of-way or easement is necessary to ensure access for the operation and maintenance
14   of the Snake Creek pipeline so that Plaintiffs may exercise their water right.

15       92.    The Federal Defendants in this action have a plainly defined and peremptory duty
16   to provide the Plaintiffs a right-of-way or easement over the National Park Service lands at issue
17   herein.  The duty of the National Park Service in this action is a positive command and so plainly
18   prescribed as to be free from doubt.

19       93.    No other adequate remedy is available from the Department of the Interior, because
20   only the Federal district courts have original jurisdiction to invoke mandamus and to quiet title.

**REQUEST FOR RELIEF**

22   WHEREFORE, on the foregoing basis, the Plaintiffs respectfully request that the Court
23   grant the following relief:

24       94.    A declaratory judgment that the Plaintiffs are entitled to a recognized right-of-way
25   or easement over National Park Service lands pursuant to the Irrigation or General Right of Way
26   Act of March 3, 1891 or the Act of 1866;

27   ///
28   ///

95. A declaratory judgment quieting title in the Plaintiffs for a right-of-way or easement over the National Park Service lands at issue herein, pursuant to the Irrigation or General Right of Way Act of March 3, 1891 or the Act of 1866;

96. A declaratory judgment that the Plaintiffs are entitled to permanent access for the operation and maintenance of the Snake Creek pipeline;

97. A declaratory judgment that the Plaintiffs are not liable for any trespass to the United States for the operation and maintenance of the Snake Creek pipeline, and that the National Park Service may not preclude or unreasonably interfere with the reasonable exercise of the rights of those who hold valid rights-of-way within the boundaries of National Park Service lands;

98. A court order for a writ of mandamus compelling the authorized officer of the National Park Service to provide to the Plaintiffs a recognized right-of-way or easement over the National Park Service lands at issue herein, pursuant to the Irrigation or General Right of Way Act of March 3, 1891 or the Act of 1866;

99. Award the Plaintiffs their reasonable costs, litigation expenses, and attorneys' fees associated with this litigation pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412, and all other applicable authorities; and

100. Grant such further and other relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED this 5th day of June, 2018.

/s/ Debbie Leonard
Debbie Leonard (#8260)
McDonald Carano LLP
100 West Liberty Street, Tenth Floor
Reno, Nevada 89501
(775) 788-2000 Telephone
dleonard@mcdonaldcarano.com

Brandon L. Jensen
Budd-Falen Law Offices, LLC
300 East 18th Street
Post Office Box 346
Cheyenne, Wyoming 82003
(307) 632-5105 Telephone
brandon@buddfalen.com

*Attorneys for Plaintiffs Baker Ranches, Inc., Darwin C. Wheeler, and Owen L. and Patricia T. Gonder*